1

2

3

4

5                IN THE UNITED STATES DISTRICT COURT

6              FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    DOUGLASS ROBINSON and DAVID LAU          No. C 10-01494 SI
     YIN LOONG,
9                                             **ORDER GRANTING MOTION TO**
                    Plaintiffs,               **DISMISS**
10
          v.
11
     HSBC BANK USA,
12
                    Defendant.
13   _____/

14

15          Currently before the Court is defendant's motion to dismiss.  The matter came before the Court

16   for hearing on July 30, 2010.  Having considered the papers and arguments made, for the reasons set

17   forth below, the Court GRANTS the motion to dismiss with prejudice.

18

19                              **BACKGROUND**

20          Plaintiffs allege that on or about October 21, 2009, defendant HSBC Bank USA ("HSBC"),

21   circulated a full-page, double-sided print advertisement ("Ad") inserted into the *San Francisco*

22   *Chronicle* which prominently features a photograph of the "street-facing side" of plaintiffs' house ("the

23   Property").  First Amended Complaint ("FAC") ¶ 19.  On the first page of the Ad, there is a photograph

24   showing the second and third stories of two Victorian homes.  FAC, Exhibit A.  Tagged onto the

25   photograph are the words "A Mortgage To Match Your Ambitions.  Wherever The World Takes You."

26   FAC ¶ 20 & Ex. A.  On the back of the Ad, HSBC advertises its "Premier Mortgage," giving details of

27   the offer and HSBC's contact information. FAC ¶ 20.  The back contains more advertising copy that

28   reads, "Around the block or halfway around the globe, a Premier mortgage opens up a world of

*United States District Court*
*For the Northern District of California*

1    possibilities.  Your ambitions are not limited by your latitude.  No matter where you chose to call home,

2    you need a mortgage that lets you take advantage of all the world has to offer.  When you're ready to

3    settle down, consider an HSBC Premier Mortgage." FAC, Ex. A at 2.  The Ad "identifies the precise

4    longitudinal plane on which" plaintiffs' Property is situated.  FAC ¶ 20.  The back of the Ad contains

5    another, smaller, cropped picture of the top floor and roof-line of three houses, including plaintiffs'

6    Property. *See* FAC, Ex. A.

7    Plaintiffs' Property is a "picturesque 'Victorian-style' home in the Haight neighborhood" where

8    Plaintiffs have lived for over a decade.  FAC ¶ 14.  The building "has a distinctive bright yellow and

9    green exterior, with two sets of ornate green molding above two levels of bay windows, yellow and

10    green ionic columns dividing each window pane of the bay windows and a series of yellow doric

11    columns creating the molding in between the two main levels of the subject property." *Id.* ¶ 15.

12    Plaintiffs allege that the mortgage on the Property was paid off "long ago," and that Plaintiff Robinson

13    owns the home outright, free and clear of any mortgages or liens. *Id.* ¶ 16.  Plaintiffs assert that they

14    are not and never have been customers of HSBC, HSBC did not contact Plaintiffs or get their permission

15    before publication of the Ad, and plaintiffs do not endorse or approve of HSBC's products or services.

16    *Id.* ¶¶ 17, 22-23, 27-28.

17    After the Ad was distributed, plaintiffs began to get inquiries from neighbors, local business

18    owners, unknown realtors, as well as tenants who live in the Property, as to their financial condition and

19    their willingness to sell the Property. *Id.* ¶ 24.  Plaintiffs allege that HSBC's conduct is highly offensive

20    as it falsely implies that Plaintiffs obtained a mortgage from HSBC, are customers of HSBC, and

21    endorse/approve of HSBC's products, services or mortgages. *Id.* ¶ 26.  Plaintiffs explain that HSBC's

22    conduct is particularly offensive in the "current economic climate where thousands of individuals

23    nationwide are losing value in their homes, in part due to precisely the type of loan advertised in the

24    HSBC flyer (Adjustable Rate Mortgage loans), when in fact Plaintiff Robinson owns the Property free

25    of encumbrances." *Id.* ¶ 29.

26    Plaintiffs filed this action on February 19, 2010 in San Francisco County Superior Court.

27    Defendant removed the case to this Court on April 8, 2010, on the basis of diversity jurisdiction.

28    Plaintiffs subsequently filed a First Amended Complaint on May 17, 2010 alleging the following causes

**United States District Court**
For the Northern District of California

2

of action against HSBC: (1) violation of right of publicity under California Civil Code section 3344, or alternatively common law claim of appropriation; (2) trade libel in violation of California Civil Code section 45; (3) unjust enrichment; (4) false and misleading advertisement in violation of California Business and Professions Code section 17500 *et seq*. ("FAL"); (5) violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750 *et seq*.; and (6) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code section 17200 *et seq*. Defendant now moves to dismiss the FAC on the grounds that plaintiffs fail to state a claim as a matter of law.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**1.      Plaintiffs' Claims are Not Preempted by the Copyright Act**

Defendant first argues that plaintiffs fail to state a claim as a matter of law because each of plaintiffs' claims is preempted by the Copyright Act.  According to HSBC, plaintiffs are seeking to enforce a property interest in depictions of their house and any state or common law claims regarding the depiction of their house are encompassed within the scope of the Copyright Act and  preempted. Generally, "[a] state law cause of action is preempted by the Copyright Act if two elements are present. First, the rights that a plaintiff asserts under state law must be 'rights that are equivalent' to those protected by the Copyright Act. . . . Second, the work involved must fall within the 'subject matter' of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103." *Kodadek v. MTV Networks*, 152 F.3d 1209, 1212 (9th Cir. 1998) (internal citations omitted).

 To support its argument, HSBC relies on two cases, *Leicester v. Warner Bros.*, 232 F.3d 1212, 1216 (9th Cir. Cal. 2000) and *Landrau v. Betancourt*, 554 F. Supp. 2d 102 (D.P.R. 2007) for the proposition that the right to depict a building through photography is "clearly within the scope of the Copyright Act."  Motion at 4.  Those cases, however, do not support HSBC.

In *Leicester v. Warner Bros.*, 232 F.3d 1212, 1216 (9th Cir. 2000), the Ninth Circuit explained that in passing the Architectural Works Copyright Protection Act of 1990 (AWCPA), Congress extended copyright protection for the first time to the actual structures built from architectural plans.  *Id.* at 1216-17 (noting that prior to AWCPA, buildings had been considered to be "useful articles" not protected by the Copyright Act).  However, as the Ninth Circuit also noted,  in passing the AWCPA Congress specifically exempted from copyright infringement photographs of buildings taken from a public place. *Id.* at 1217.[1]  As such, the Ninth Circuit concluded that the use of a well-known building in downtown Los Angeles in the film *Batman Forever* did not constitute copyright infringement.  *Id*. at 1219-20.

---

[1]   As the Court explained, Congress exempted photographs of buildings from copyright protection, in part, because "'[m]illions of people visit our cities every year and take back home photographs, posters, and other pictorial representations of prominent works of architecture as a memory of their trip . . . . These uses do not interfere with the normal exploitation of architectural works. Given the important public purpose served by these uses and the lack of harm to the copyright owner's market, the Committee chose to provide an exemption, rather than rely on the doctrine of fair use, which requires ad hoc determinations.'"  *Id.* (quoting H.R. Rep. 101-735, at 22).

HSBC's only other case, *Landrau*, 554 F. Supp. 2d 102, held that there is no copyright protection for owners or architects of buildings against those who take photographs of architectural works from a public place. *Id*. at 113.

Here, plaintiffs could not assert a copyright infringement claim with respect to photographs of their Property taken from a public place. Accordingly, the interests they seek to protect do not fall within the subject matter of the Copyright Act, defeating the first prong of the copyright preemption test set out in *Kodadek*. Nor can defendant meet the second prong of *Kodadek*, since the rights that plaintiffs assert under state law are not "rights that are equivalent" to those protected by the Copyright Act.

In undertaking the equivalency analysis, courts have held that statutory and common law misappropriation of likeness claims are not preempted by the Copyright Act. *See, e.g.*, *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004 (9th Cir. Cal. 2001) ("The subject matter of Appellants' statutory and common law right of publicity claims is their names and likenesses. . . . A person's name or likeness is not a work of authorship within the meaning of 17 U.S.C. § 102. This is true not-withstanding the fact that Appellants' names and likenesses are embodied in a copyrightable photograph."); *see also Waits v. Frito-Lay, Inc*., 978 F.2d 1093, 1100 (9th Cir. 1992) (misappropriation claim was not preempted by Copyright Act because claim was "for infringement of voice, not for infringement of a copyrightable subject such as sound recording or musical composition," and elements of misappropriation of the likeness of a person's voice were "different in kind" from those in a copyright infringement case challenging the unauthorized use of a song or recording); *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362, 374 (Cal. App. 2d Dist. 2000) ("a section 3344 claim is preempted [] where an actor or model with no copyright interest in the work seeks to prevent the exclusive copyright holder from displaying the copyrighted work. We do not believe a section 3344 claim is preempted [] where, as here, the defendant has no legal right to publish the copyrighted work.").

HSBC has not demonstrated that plaintiffs' claims fall within the subject matter of the Copyright Act or that the rights being asserted are equivalent to those protected by the Copyright Act. The Court therefore rejects defendant's argument that plaintiffs' claims are preempted and must be dismissed on that account.

United States District Court
For the Northern District of California

5

United States District Court
For the Northern District of California

**2.      Plaintiffs Fail to State a Claim for Misappropriation**

In order to sustain a common law cause of action for commercial misappropriation, a plaintiff must prove: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. Cal. 2001).  To prove the statutory cause of action under Civil Code section 3344, a plaintiff must also prove a knowing use by the defendant, as well as a direct connection between the alleged use and the commercial purpose. *Id*.

### A.  Plaintiffs Cannot State a Cause of Action Under Section 3344

Section 3344 authorizes a cause of action for misappropriation where anyone "uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." HSBC argues that plaintiffs cannot state a claim for misappropriation where a picture of plaintiffs' Property was used in the Ad because section 3344 is strictly construed to require the use of a person's name, voice, signature, photograph or likeness. Defendant notes that the Ninth Circuit in *Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir. 1988), rejected Bette Midler's claim for misappropriation under section 3344 where Ford used a Midler "sound alike" in a car commercial because the statute only protects against the use of a person's name, voice, signature, photograph or likeness, none of which were used in the commercial. *Id*. at 463.

Plaintiffs' Opposition brief does not respond to HSBC's argument under section 3344.  The Court finds that as the Ad did not use plaintiffs' names, voices, signatures, photographs or likenesses – only the likeness of plaintiffs' Property – their claim falls outside the protection of section 3344.

### B.      Plaintiffs Cannot State a Claim for Common Law Misappropriation

Defendant also contends that plaintiffs fail to state a common law cause of action for misappropriation of likeness because the Ad fails to identify plaintiffs or appropriate their likenesses. Plaintiffs respond that their claim is based not only on the allegation that the Property is a unique building with distinctive molding and fixtures, but also that plaintiffs are easily identifiable by the

1   notoriety of the Property.  To support their argument that a misappropriation of likeness claim can be

2   based upon the appropriation of the likeness of a piece of property, which in turn identifies someone,

3   plaintiffs rely solely on *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. Cal.

4   1974).  In *Motschenbacher*, the plaintiff was a famous race car driver whose race cars had various

5   unique characteristics including: a narrow white pinstripe that appeared on no other race car and which

6   adorned the leading edges of his cars' bodies, which had uniformly been solid red; and an oval-shaped

7   white background for his racing number, in contrast to the circular backgrounds of all other cars.  *Id.*

8   at 822.  The defendant used a photograph Motschenbacher's car in a commercial, but altered the

9   photograph to change the number of the car from "11" to "71" and added a "spoiler" to the car.  *Id.*

10  Plaintiff was, in fact, driving the car in the photo but his features were not visible.  *Id.*  The issue

11  determined in that case was whether, despite the alterations to the picture of plaintiff's race car, he was

12  nonetheless personally identifiable.  As the Court explained, "[c]learly, if the district court correctly

13  determined as a matter of law that plaintiff is not identifiable in the commercial, then in no sense has

14  plaintiff's identity been misappropriated nor his interest violated."  *Id.*, at 826-27.

15      In *Motschenbacher*, the Ninth Circuit found that the district court's conclusion of law "to the

16  effect that the driver is not identifiable as plaintiff is erroneous in that it wholly fails to attribute proper

17  significance to the distinctive decorations appearing on the car," and remanded the case for further

18  proceedings. *Id.* at 827.  In *Midler v. Ford Motor Co.*, 849 F.2d at 463, the Ninth Circuit explained the

19  *Motschenbacher* holding as follows: "California will recognize an injury from 'an appropriation of the

20  attributes of one's identity.' . . . It was irrelevant that Motschenbacher could not be identified in the ad.

21  The ad suggested that it was he. The ad did so by emphasizing signs or symbols associated with him."

22  *Id.*

23      Similarly, the Ninth Circuit in *Midler* – after rejecting Midler's section 3344 misappropriation

24  claim – held that a common law claim was alleged since "when a distinctive voice of a professional

25  singer is widely known and is deliberately imitated in order to sell a product, the sellers have

26  appropriated what is not theirs and have committed a tort in California.  Midler has made a showing,

27  sufficient to defeat summary judgment, that the defendants here for their own profit in selling their

28  product did appropriate part of her identity."  *Id.* at 463.

United States District Court
For the Northern District of California

The allegations at issue here simply do not rise to the level of those in *Motschenbacher* or *Midler*.  In each of those cases, the courts found that by the use of the immediately recognizable car or the use of the immediately recognizable (although impersonating) voice, Motschenbacher and Midler's identities may have been appropriated.  Plaintiffs' allegation that their house is so recognizable that after the Ad ran they received inquiries from friends and strangers regarding their financial solvency and intentions with respect to the house because they were *known* as the owners of the home by neighbors and realtors, does not mean that *plaintiffs'* identities were appropriated by HSBC.  *Motschenbacher*, 498 F.2d at 825 (common law claim affords legal protection to an "individual's proprietary interest in his own identity.").  Plaintiffs do not cite any cases that support their argument that the Property – which was not constructed or designed by plaintiffs – is part of their identity.[2]  They are, instead, simply the owner and occupants of a very distinctive building.

For the foregoing reasons, plaintiffs' common law claim for misappropriation fails as a matter of law and is DISMISSED without leave to amend.

**3.    Plaintiffs Fail to State a Claim for Trade Libel**

Trade libel is an intentional disparagement of the quality of property which results in pecuniary damage to plaintiff.  *See, e.g., Hofmann Co. v. E. I. du Pont de Nemours & Co.*, 202 Cal. App. 3d 390, 397 (1988).  In order to state a claim for trade libel, plaintiffs must allege: (1) publication, (2) absence of justification, (3) falsity and (4) direct pecuniary loss.  *See Seeley v. Seymour,* 190 Cal. App. 3d 844, 858 (1987).  As the California Supreme Court explained in *Blatty v. New York Times Co.,* 42 Cal.3d 1033, 1042 (1986), the tort requires that the injurious false statement "specifically refer to, or be 'of and concerning,' the plaintiff in some way."  *See also Hofmann,* 202 Cal. App. 3d at 397-401 (applying "of and concerning" factors to claim of trade libel).

In order to determine whether a statement is protected opinion or a false statement of fact, "[t]he court must put itself in the place of an 'average reader' and decide the 'natural and probable effect' of

---

[2]  As defendant noted at oral argument, if plaintiffs sold and moved out of the Property, the Property would still retain its notoriety but the Property would no longer be identified with plaintiffs.  In *Motschenbacher*, by contrast, even if plaintiff race car driver sold his unique racing car, it would still be part of his identity.

United States District Court
For the Northern District of California

1   the statement." *Hoffman*, 202 Cal. App. 3d at 398 (internal quotations removed).  "In addition to the

2   language, the context of a statement must be examined. . . . The court must 'look at the nature and full

3   content of the communication and to the knowledge and understanding of the audience to whom the

4   publication was directed.'" *Id*. (quoting *Baker v. Los Angeles Herald Examiner,* 42 Cal.3d 254, 260

5   (1986)).  "Whether a statement declares or implies a provably false assertion of fact is a question of law

6   for the court to decide, unless the statement is susceptible of both an innocent and a libelous meaning,

7   in which case the jury must decide how the statement was understood." *Franklin v. Dynamic Details,*

8   *Inc*., 116 Cal. App. 4th 375, 385 (2004).[3]

9       HSBC argues that plaintiffs' claim must be dismissed for two reasons: failure to allege falsity

10  and failure to allege pecuniary damages.  With respect to the first argument, HSBC contends that as

11  there was no direct statement about plaintiffs' Property or financial situation whatsoever,  plaintiffs

12  cannot prove a false statement was made which disparaged the Property. Plaintiffs respond that the Ad

13  was "a malicious implication" that plaintiffs are financially insolvent or "are in need of a mortgage

14  because their ambitions are disproportionate to their assets." Oppo. at 6.  Falsity, they argue, is satisfied

15  by pleading that HSBC knew, or should have known, that "Plaintiffs do not hold or need an HSBC

16  mortgage on the [] Property and that they have never done business with HSBC." *Id.*

17      Plaintiffs fail to cite any cases in support of their argument that, on the facts presented here, the

18  Ad creates a false and disparaging "implication" of fact.[4]  Generally, "in determining whether a

19  publication has a defamatory meaning, the courts apply a totality of the circumstances test to review the

20  meaning of the language in context and whether it is susceptible of a meaning alleged by the plaintiff."

21

22      [3] As the *Franklin* Court recognized, "[t]he relevant law is the same as to libel and trade libel,
    and the same conditional privileges apply to both causes of action."  *Id*., 116 Cal. App. 4th at 384.

23

24      [4] Implications come into play in defamation law in number of ways.  For example, in order to
    be actionable, false statements must be "of and concerning" the object who is identified directly or by
25  "clear implication" based on the context of the statement.  *See Blatty*, 42 Cal.3d at 1044. Additionally,
    "[a] statement of opinion may be actionable if it implies the allegation of undisclosed defamatory facts
26  as the basis for the opinion." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 902-903 (2004). As courts have
    repeatedly recognized, "[w]hen the basis of a claim of libel lies in an implication flowing from the
27  rhetoric of a publication, the allegedly damaging implication frequently cannot be connected to any one
    statement, or to even a few specific statements, but rather emanates from the tone of the article as a
28  whole." *Kapellas v. Kofman*, 1 Cal. 3d 20, 33 (1969).

1   *Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1337 (2009). Reviewing the full text and

2   context of the Ad, the Court finds that is does not state or imply a false fact or actionable opinion based

3   on undisclosed facts. The text on the front of the Ad merely states that HSBC offers a "Mortgage to

4   Match Your Ambitions. Wherever The World Takes You." The back of the Ad discloses the terms of

5   the adjustable rate mortgages offered, and suggests that an HSBC mortgage can help individuals move

6   wherever they want and take advantage of "all the world has to offer." There is nothing in the Ad, or

7   its context, that states or implies a defamatory or disparaging fact about plaintiffs or their Property.

8   Plaintiffs have cited no case that holds or even suggests that an allegation that someone has a mortgage,

9   even an adjustable rate mortgage, is defamatory or disparaging. Moreover, the Ad was not a "for sale"

10  ad, an ad for "foreclosure bargains," or an ad which could have conveyed negative information about

11  plaintiffs. The Ad is not susceptible to the meaning suggested by plaintiffs, *i.e.*, that they are financially

12  insolvent or their ambitions are disproportionate to their assets. Instead, the Ad simply advertises

13  "premier," albeit adjustable rate, mortgages.

14          With respect to damages, plaintiffs argue that the FAC adequately alleges "special damages,"

15  as defined in California Civil Code section 48a, because plaintiffs had to procure legal representation

16  and file this lawsuit to protect their rights. Oppo. at 6. Plaintiffs' FAC, however, is devoid of any

17  allegation that they suffered *any* pecuniary or special damages. The FAC alleges only that plaintiffs

18  suffered contempt, ridicule and pity in their community, since the Ad caused members of the community

19  to inquire about and doubt plaintiffs' financial solvency. FAC ¶ 57. That is insufficient as a matter of

20  law.[5] The damage suffered must be from an injury to the property. *See, e.g., Truck Ins. Exch. v.*

21  *Bennett*, 53 Cal. App. 4th 75, 84 (1997) ("The thrust of the tort of disparagement or slander of title is

22  protection from injury to the salability of property."); *cf.* Cal. Civ. Code 48a (special damages are those

23  suffered "in respect to his property, business, trade, profession or occupation."). Here, there are no

24

25          [5] The need to allege and prove pecuniary damages caused by the false statement is significant;
    it is one of the key features distinguishing trade libel from defamation/slander. *See Leonardini v. Shell*
26  *Oil Co.*, 216 Cal. App. 3d 547, 573 (1989) ("The basic difference between the two torts, it has been
    noted, is that an 'action for defamation is designed to protect the reputation of the plaintiff, and the
27  judgment vindicates that reputation, whereas the action for disparagement is based on pecuniary damage
    and lies only where such damage has been suffered.'" (quoting 5 Witkin, *Summary of Cal. Law*, Torts,
28  ¶. 661-62)).

United States District Court
For the Northern District of California

1  allegations as to how plaintiffs' property, and plaintiffs as a result, have suffered pecuniary or special

2  damage.  If a claim for attorneys fees and costs of suit could qualify as pecuniary or special damages

3  for purposes of pleading a trade libel claim, then each and every false statement would be actionable

4  without a showing that the false statement *caused* damage to an individual's trade or property.

5      While plaintiffs may be able to amend with respect to their failure to plead damages, they cannot

6  plead around the Court's conclusion that the Ad was not false or disparaging as a matter of law.

7  Therefore, plaintiffs' claim for trade libel is DISMISSED without leave to amend.

8

9  **4.      There is No Cause of Action For Unjust Enrichment**

10     Defendant cites persuasive authority holding that California does not recognize a stand-alone

11  cause of action for unjust enrichment.  *See, e.g.*, *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350

12  (2010) (finding no separate cause of action for unjust enrichment, which is synonymous with

13  restitution); *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) ("Unjust enrichment is not a cause

14  of action, however, or even a remedy, but rather 'a general principle, underlying various legal doctrines

15  and remedies.'" (internal quotations omitted)).  Plaintiffs, in response, cite three cases which note in

16  passing that unjust enrichment "claims" or "theories" were pled.  *See, e.g., 21st Century Ins. Co. v.

17  Superior Court*, 47 Cal. 4th 511 (2009); *Snowney v. Harrah's Entertainment, Inc*., 35 Cal. 4th 1054

18  (2005); *Huskinson & Brown v. Wolf*, 32 Cal. 4th 453 (2004).  Those cases, however, do not explain

19  whether the unjust enrichment claims and theories were based on *other* causes of action, and in no way

20  support their argument that unjust enrichment exists as a stand-alone cause of action.

21     Plaintiffs argue that they should be given leave to amend to allege a claim for "restitution" in

22  lieu of their unjust enrichment claim.  Oppo. at 7.  However, plaintiffs fail to explain how "restitution"

23  is a cause of action, as opposed to a form of relief that attaches to a cause of action.  *See, e.g.*, *McBride,

24  123 Cal. App. 4th at 388 ("we construe [plaintiff's] purported cause of action for unjust enrichment as

25  an attempt to plead a cause of action giving rise to a right to restitution.").  There is no cause of action

26  for restitution, but there are various causes of action that give rise to restitution as a remedy.  *See id.* at

27  388-89.

28     In light of HSBC's authorities, which address the issue directly and hold that there is no cause

of action for "unjust enrichment," the Court DISMISSES plaintiffs' third cause of action for unjust enrichment with prejudice.

**5.      Plaintiffs Fail to State a Claim for Violation of California's Consumers Legal Remedies Act**

The CLRA provides protection to a specific category of consumers from damages suffered in connection with a consumer transaction.[6]  As defendant points out, in this case there was no consumer transaction or attempted transaction to which plaintiffs were a party.  Plaintiffs do not dispute that there was no transaction between HSBC and them.  Instead, they simply repeat their allegations that they are "consumers" under the CLRA – without identifying what consumer good they sought or acquired from anyone, much less from HSBC – and assert they have been damaged as a result of HSBC's conduct. Oppo. at 7-8.

Plaintiffs' own pleading demonstrates that plaintiffs are not and never have been customers of HSBC.  FAC ¶ 17.  In Opposition, plaintiffs do not argue that they ever sought to enter an transaction with HSBC, much less that they were then damaged as a result of *that* interaction.  As such, plaintiffs cannot state a claim for violation of the CLRA and the Court DISMISSES the claim with prejudice.

**6.      Plaintiffs Fail to State Claims for Violation of California's False and Misleading Advertising and Unfair Competition Laws**

**A.      Plaintiffs Fail to State a Claim under the False Advertising Law**

As relevant to this action, the FAL prohibits "any person" with the intent to perform services or to induce the public to enter into any obligation, "to make or disseminate" any statement concerning

---

[6]  The CLRA, Civil Code section 1761(d), defines a consumer as, "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Section 1761(e) defines transaction as, "an agreement between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement."   Section 1700 lists the specific "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person *in a transaction* intended to result or which results in the sale or lease of goods or services to any consumer" that are unlawful (emphasis added). Finally, section 1780 identifies which consumers can bring actions under the CLRA; specifically, "Any consumer who suffers any damage *as a result* of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain" specific forms relief.  (Emphasis added).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   those services "which is untrue or misleading, and which is known, or which by the exercise of

2   reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.[7]

3   Defendant argues that plaintiffs cannot allege a FAL claim because there was nothing false or

4   misleading about the Ad in question, and that even if the Ad could be seen as disparaging plaintiffs,

5   there is nothing untrue or misleading about the Ad itself.  The Court agrees.  The FAL seeks to prohibit

6   false and misleading representations made in an effort to induce the public to buy goods or services.

7   Plaintiffs do not argue that there is anything false or misleading about the text or services being offered

8   by HSBC in the Ad.  Instead, plaintiffs' complaint is that they were disparaged by the juxtaposition of

9   the text of the Ad with the photos of their Property, but that is not a false advertising claim.

10          As such, the Court DISMISSES plaintiffs' FAL claim with prejudice.

11

12          **B.          Plaintiffs Fail to State a Claim under the Unfair Competition Law**

13          California's UCL "is written in the disjunctive, it establishes three varieties of unfair competition

14   – acts or practices that are unlawful, or unfair, or fraudulent."  *Cel-Tech Communications, Inc. v. Los*

15   *Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999).  The dismissal of plaintiffs' other causes

16   of action with prejudice means that plaintiffs cannot claim that HSBC's actions were unlawful under

17   the UCL.  The finding that HSBC's Ad was not false or misleading means that plaintiffs cannot allege

18   that the Ad was fraudulent under the UCL.  Plaintiffs, therefore, are left with the allegation that HSBC's

19   Ad was an unfair act of competition.

20          Defendant argues that plaintiffs' UCL claim must be dismissed because plaintiffs have not and

21   cannot allege that they "lost money or property" as a result of HSBC's conduct.  As the California

22   Supreme Court held in *Branick v. Downey Savings & Loan Assn.*, 39 Cal. 4th 235, 240 (2006), "[a]fter

23   Proposition 64, only those private persons 'who [have] suffered injury in fact and [have] lost money or

24   property' (§§ 17204, 17535) may sue to enforce the unfair competition and false advertising laws.

25   Uninjured persons may not sue (§§ 17204, 17535), and private persons may no longer sue on behalf of

26

27          [7]  A false or misleading advertising claim must be evaluated from the vantage of a reasonable
     consumer.  *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008) Under that standard,
28   plaintiffs must show that "members of the public are likely to be deceived" by the advertisement.  *Id.*

13

United States District Court
For the Northern District of California

1    the general public."[8]  If plaintiffs cannot allege they "lost money or property" as a result of an unfair

2    practice, plaintiffs do not have standing to sue under the UCL.  *Id*.

3           Plaintiffs' FAC is devoid of any factual allegations that they "lost money or property" as a result

4    of HSBC's conduct.  In their Opposition brief, plaintiffs argue only that they have spent time and money

5    "vindicating the rights violated as a result of HSBC's unlawful publication."  Oppo. at 7.  That

6    argument, however, is insufficient.  Plaintiffs cannot establish standing to pursue a UCL claim based

7    on expenses incurred in order to bring their UCL claim.  If they could, the requirement that individuals

8    show they lost money or property "as a result" of the challenged practice in order to have standing to

9    sue under the UCL would be meaningless.  *Cf. Rubio v. Capital One Bank*, 2010 U.S. App. LEXIS

10   14968 (9th Cir. July 21, 2010) (noting that loss of credit or payment of extra money is sufficient to

11   establish standing under the UCL).  During oral argument, the Court asked plaintiffs' counsel exactly

12   what "damage" plaintiffs had suffered.  Counsel responded that they had suffered ridicule and questions

13   about their solvency.  That is not lost "money or property" sufficient to confer standing under the UCL.[9]

14          The Court finds that plaintiffs have not and cannot allege lost "money or property" and thus have

15   no standing.  In addition, although it is not necessary to this decision, the Court has serious doubts that

16   the challenged practice is "unfair," within the meaning of the UCL.  As the Ninth Circuit recently

17   recognized, the California appellate courts disagree on the test for an "unfair" consumer practice.  *Rubio*,

18   2010 U.S. App. LEXIS 14968 at *22. Under the balancing test, plaintiffs must show "that the harm to

19   the consumer" from a defendant's practice outweighs the practice's utility.  *Id.*  The alternative test

20   requires a plaintiff to show that a practice violates public policy as declared by "specific constitutional,

21

22          [8] Plaintiffs fail to acknowledge that Proposition 64 took away the ability of non-injured plaintiffs
     to sue on behalf of the general public under the UCL.  *Branick*, 39 Cal. 4th at 240.  Their reliance on
23   *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553 (Cal. 1998), therefore, is misplaced.

24          [9] Relatedly, the Court doubts plaintiffs would be entitled to any remedy on the facts of this case.
     Although plaintiffs seek "damages," under the UCL restitution is the only form of monetary relief
25   available.  The "object of restitution is to restore the status quo by returning to the plaintiff funds in
     which he or she has an ownership interest."  *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th
26   1134, 1148-49 (2003).  Plaintiffs, by their own admission, are not and have never been customers of
     HSBC, therefore, there are no funds to return. Likewise plaintiffs cannot seek disgorgement of any
27   alleged "ill-gotten gains" by HSBC through this non-representative action.  *Id.* at 1145 (noting that
     "disgorgement of money obtained through an unfair business practice is an available remedy in a
28   representative action only to the extent that it constitutes restitution.").  Injunctive relief also seems
     unlikely, as the Court doubts HSBC is going to use another picture of plaintiffs' Property in a future ad.

United States District Court
For the Northern District of California

statutory or regulatory provisions." *See id.* (citing *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845 (2002)).  As discussed above, plaintiffs have failed to show that HSBC's conduct – running an ad showing plaintiffs' and others' houses without seeking permission from plaintiffs – violates or has the same effect as a violation of a specific constitutional, statutory or regulatory provision.  The only allegation as to what is "unfair" in HSBC's conduct, is the allegation that defendant's acts and practices have allowed HSBC "to gain an unfair competitive advantage over law-abiding financial institutions and banks." FAC ¶ 85.  Plaintiffs, however, do not explain how the practice of using photographs of properties taken from public vantages for non-defamatory advertisements, even without securing the permission of the property owners, harms consumers or confers an unfair benefit on HSBC.

Since plaintiffs cannot plead standing under the UCL, the Court DISMISSES the claim with prejudice.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DISMISSES plaintiffs' First Amended Complaint with prejudice.

**IT IS SO ORDERED.**

Dated: August 9, 2010

SUSAN ILLSTON
United States District Judge

15